# ANDERSON *v.* SMITH.*

MASTER AND SERVANT; ASSUMPTION OF RISK.

1. A servant, when he engages his services to his master, impliedly agrees to assume all of the risks ordinarily incident to the employment.

2. Where a laborer in the employ of a contractor engaged in tearing down a building was killed by the falling of a heavy door while he and other laborers, under the direction of a foreman of the master, were attempting, without the use of a block and tackle, or other appliances, to lower it to the ground, it was *held*, in an action by the administrator of the decedent's estate against the employer, for damages for death of the decedent (1) that the failure of the employer to furnish a block and tackle or other appliances for lowering the door was not negligence on his part, in the absence of evidence to show that such appliances were usually used for similar purposes, and that the method adopted was not the customary one; (2) that it was not the duty of the employer to warn the intestate of the apparent danger of lowering the door; (3) that the risk taken by the intestate was one of the risks of his employment, which he had assumed; and (4) that the trial court properly directed a verdict for the defendant.

No. 2107. Submitted March 7, 1910. Decided April 5, 1910.

HEARING on an appeal by the plaintiff from a judgment of the Supreme Court of the District of Columbia, upon a verdict directed by the court, in an action for damages for the death of the plaintiff's intestate. *Affirmed.*

The COURT in the opinion stated the facts as follows:

This is an action [by Ella Anderson, administratrix of the estate of Charles P. Anderson] on the case, brought to recover

---

*As to the duty of a master to warn or instruct his servant, see note to *James* v. *Rapides Lumber Co.* 44 L.R.A. 33.

damages for the death of appellant's intestate, caused while in appellee's employ as a laborer. For convenience, the parties will be referred to in the relation they occupied in the court below,—appellant as plaintiff, and appellee as defendant.

The evidence shows that the defendant, J. Paul Smith, at the time of the accident, was engaged in wrecking a building in this city; that the work was in charge of his foreman; and that the building had been taken down to the first floor, excepting a large double frame door, which was still standing. The plaintiff's evidence also discloses that the door frame was from 12 to 15 feet in height, and from 10 to 12 feet in width, with a lintel block on top 4 by 4 inches, extending across the width of the door, and a leaded glass transom underneath, some $2\frac{1}{2}$ feet in width, and semicircular in form. There were glass panels in both doors, with lights on each side, extending to within a foot and a half or 2 feet of the base. It was also shown that there was a fringe of plaster around the top and on each side of the door frame, which had adhered to it in tearing away the surrounding structure. The weight of the door frame, with this attachment, was estimated at from twelve to fifteen hundred pounds.

A number of men employed on the work were directed by the foreman to take down this frame. Seven men went on the inside for the purpose of lowering it to the ground as it was pried over in that direction by two men on the outside. The men on the inside arranged themselves in such manner that two—Anderson, plaintiff's intestate, and another—were in the center. When the frame was pried over, the men on the inside were either unable to hold it, or let it fall in such manner that Anderson was caught under it and crushed to death. It also appears from the evidence that no appliances of any sort were used or furnished by the defendant or his foreman to be used in lowering the door.

When plaintiff had submitted her evidence, a verdict was directed for the defendant. From the judgment entered thereon, this appeal was taken.

*Mr. E. N. Hopewell* and *Mr. Leonard J. Mather* for the appellant.

*Mr. Samuel Maddox* and *Mr. H. Prescott Gatley* for the appellee.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

The case comes here upon a single assignment of error: "That the trial court erred in withdrawing the case from the jury and directing a verdict for the defendant."

The liability of an employer to his employees does not arise from the danger of the occupation in which the employees are called upon to engage, but from accident occurring through the negligence of the employer. It is insisted by counsel for plaintiff that the defendant was negligent in not supplying block and tackle to be used in lowering the door in question. There is no evidence whatever to show that such implements are usually employed for this purpose, or that the method adopted is not the customary one. The burden is on the plaintiff to establish negligence on the part of the defendant. Such negligence cannot be presumed, and may only be inferred from facts showing undisclosed knowledge of a condition which exposes the employee to a peculiar danger unknown to him, and which he could not, with the exercise of ordinary prudence and intelligence, have observed. The employee, when he engages his services to his employer, impliedly agrees to assume all the risks ordinarily incident to such employment. If the work demands peculiar skill in the use of the machinery or instrumentalities employed to carry on the work, he assumes the risks incident thereto. He impliedly assumes this risk in his contract of employment.

The rule was well stated in *Wood* v. *Heiges,* 83 Md. 257, 34 Atl. 872, as follows: "If a servant has knowledge of the circumstances under which the employer carries on his business, and chooses to accept employment, or continue in it, he assumes such risks incident to the discharge of his duties as are open

or obvious. In such cases it is not a question whether the place prepared for him to occupy, and which he assents to accept, might, with reasonable care, have been made more safe. His assent dispenses with the performance on the part of the master of the duty to make it so."

Neither do we deem it to be the duty of the master to warn his servant of apparent danger. The duty being performed by plaintiff's intestate at the time of the accident in question was not such as called for either skill or experience. The door to be lowered was in full view. The method employed was the most ancient known. It required a simple survey of the structure and an estimate of the amount of exertion it would take to lower it. Intestate's fellow employees in the trial below appear to have had no difficulty in placing what would seem to be a very exaggerated estimate on the dimensions and the weight of the doors and frame. No reason is apparent why this case should be taken out of the rule of assumed risk. Plaintiff's intestate was a mature man of ordinary intelligence, presumed to be capable of doing the very ordinary and unskilled labor he was engaged in at the time of the accident. As was said in *Kohn* v. *McNulta*, 147 U. S. 238, 37 L. ed. 150, 13 Sup. Ct. Rep. 298, where a servant was injured in coupling freight cars: "The intervener was no boy, placed by the employer in a position of undisclosed danger, but a mature man, doing the ordinary work which he had engaged to do, and whose risks in this respect were obvious to anyone. Under those circumstances he assumed the risk of such an accident as this, and no negligence can be imputed to the employer."

To hold the master liable in a case like the one before us would be to make him an insurer against accident of every nature befalling the servant while engaged in the work assigned him. This is not the law. The accident was the result of the risk assumed by plaintiff's intestate in the ordinary course of his employment, from a source with which he must be deemed to have been competent, by the exercise of ordinary prudence and intelligence, to judge of the danger involved. The court below committed no error in withdrawing the case from the

consideration of the jury, and preventing what might have resulted in a sympathetic verdict. The judgment is affirmed with costs, and it is so ordered. *Affirmed.*

An application by the appellant for a writ of error to the Supreme Court of the United States was allowed June 1, 1910.